Filed 1/9/26  P. v. Lopez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>ALEJANDRO ARAUZ LOPEZ,<br><br>　　　Defendant and Appellant. | B342589<br><br>(Los Angeles County Super. Ct. No. 23CMCF00218) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed.

　　　Leonard Chaitin for Defendant and Appellant.

　　　Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Sophia A. Lecky, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant and appellant Alejandro Arauz Lopez on three counts of sexually assaulting his daughter, D.L., when she was about six or seven years old.[1] (Pen. Code § 288.7, subd. (a).) On appeal, Lopez asserts that he received ineffective assistance because his trial counsel failed to (1) object to the testimony of the prosecution's medical expert or present a rebuttal expert; and (2) object to or adequately cross-examine the prosecution's expert on Child Sexual Abuse Accommodation Syndrome (CSAAS). Lopez also contends that the third count of rape is not substantially supported by the evidence. There was no error. We affirm.

## BACKGROUND

### I. Prosecution's Case

#### A. *D.L.'s Testimony and Medical Records*

At trial, D.L. testified that, in 2020 or 2021, when she was six or seven years old, she lived with her father's family in Los Angeles. She shared a room with her older brother and Lopez. The three shared a bunk bed. D.L.'s brother slept in the top bunk and Lopez slept in the bottom bunk. D.L. moved back and forth between the two.

One night, D.L. moved from the top bunk to the bottom bunk because her leg hurt. After she lay down, Lopez took off his pants. He then removed D.L.'s pants, climbed on top of her, and touched her genitals while "shaking . . . up and down[.]" Lopez placed D.L. on top of him and instructed her to imitate his movements. When she refused, Lopez placed D.L. next to him,

---

[1]     The victim is referred to by her initials to protect her privacy. (See Cal. Rules of Court, rule 8.90(b)(4).)

2

and she felt "a stick" touch her genitals. He did not stop until he was tired, at which point he put D.L.'s pants back on. In the morning, D.L. noticed that her pants and the bed felt wet; Lopez told her she had urinated during the night.

D.L. testified that "something like that" happened "three or four" times, ultimately clarifying that Lopez assaulted her three times in as many days.[2] The second and third incidents followed the same pattern as the first. D.L. added that Lopez also digitally penetrated her during the third incident.[3]

D.L. said she did not immediately report the abuse because she feared it would get Lopez in trouble or make him angry with her. After she moved to another state to live with her mother, D.L. told her about the incident. Her mother took D.L. to a pediatric clinic, where she tested positive for chlamydia.

### B. *Lopez's Medical Records*

After his arrest in 2023, Lopez tested positive for antibodies consistent with a past chlamydia infection. Due to the lifespan of the relevant antibodies, the test could not establish when he was infected.

### C. *Medical Expert Testimony*

Dr. Janet Arnold-Clark (Dr. Arnold-Clark), a pediatrician, testified that chlamydia is exclusively transmitted either through

---

[2] When asked what she meant by "the third day[,]" D.L. said "the first time he did it, he did it again, then he did it again." D.L. said "it fe[lt] to [her] like it happened the next day and the next day."

[3] A detailed summary of D.L.'s testimony on the second incident is unnecessary, as those details are (1) duplicative of her testimony regarding the first incident and (2) not contested on appeal.

sexual contact between individuals or perinatally, meaning from mother to child during birth. In children over the age of three, the medical community regards a positive chlamydia test as "diagnostic of sexual contact[.]"

### D. *CSAAS Expert Testimony*

Dr. Jayme Jones (Dr. Jones), a clinical psychologist, testified that CSAAS is a model that describes the behavior of children who have been sexually abused. Specifically, Dr. Jones testified that it is common for a child to wait before reporting abuse. This delayed disclosure often results when the abuse happens in secret, because the secrecy signals to the child that they are not supposed to disclose it. It is also "very common" for children to have trouble remembering details or timelines surrounding incidents of abuse.

On cross-examination, Lopez's counsel elicited testimony that CSAAS is neither diagnostic nor predictive, but merely gives context for the behavior of abused children. He also explored the relative weakness of Dr. Jones's clinical experience with CSAAS.

## II. The Defense's Case

### A. *Character Witnesses*

Lopez called multiple character witnesses, including a former girlfriend who described him as "a responsible, respectful man" who worked hard to provide for his children. She trusted Lopez to care for her children. Although she had a sexual relationship with Lopez between 2019 and 2022, she never contracted chlamydia.

### B. *Lopez's Testimony*

Lopez testified in his own defense. After he was released in October 2023 , Lopez voluntarily took a chlamydia test, which came back negative. Lopez denied ever experiencing symptoms

4

of, or being told that he was infected with, chlamydia. At a bifurcated proceeding, the trial court found true the aggravating circumstance that Lopez took advantage of a position of trust (Cal. Rules of Court, rule 4.421, subd. (a)(11)), and sentenced him to a total term of 25 years to life in state prison.

Lopez timely appealed. He also filed a petition for writ of habeas corpus in case number B348099, which we consider concurrently with this appeal.

## DISCUSSION

### I. *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 686–688 [104 S. Ct. 2052, 80 L. Ed. 2d. 674], (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 215.) To prevail on a claim of ineffective counsel, a defendant must demonstrate, among other things, that his counsel's performance "fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms[.]" (*People v. Ledesma* (2006) 39 Cal.4th 641, 746 [quoting *Strickland*, *supra*, 46 U.S. at p. 688].)

"When the record on direct appeal sheds no light on why trial counsel failed to act in the manner challenged, the defendant must show there was no conceivable tactical purpose for counsel's act or omission." (*People v. Planchard* (2025) 109 Cal.App.5th 157, 172 (*Planchard*).) Otherwise, the reviewing court "presume[s] . . . counsel's performance fell within the wide range of professional competence and that counsel's action or inaction can be explained as a matter of sound trial strategy." (*Ibid*; see also *People v. Riel* (2000) 22 Cal.4th 1153, 1185 (*Riel*) ["'A reviewing court will not second-guess trial counsel's reasonable tactical decisions.'"].)

5

Lopez argues that trial counsel's performance was deficient in two respects. First, he argues that counsel unreasonably failed to object to Dr. Arnold-Clark's testimony that a positive chlamydia test from a child over the age of three definitively indicates sexual, rather than perinatal, transmission. But Lopez identifies no legal basis for an objection.[4] (*People v. Majors* (1998) 18 Cal.4th 385, 403 ["Where 'there was no sound legal basis for objection, counsel's failure to object to the admission of the evidence cannot establish ineffective assistance.'"].)

Instead, Lopez speculates that if trial counsel had hired "an opposing expert," he could have "cited the declaration of . . . [that] expert in filing a motion in limine or basic objection to the presentation of" the prosecution's evidence. Conjecture is not enough to support an ineffective assistance claim.[5] (*People v. Williams* (1988) 44 Cal.3d 883, 933 (*Williams*) ["A factual basis,

---

[4] In his reply brief, Lopez argues for the first time that trial counsel should have objected to Dr. Arnold-Clark's opinion per section 352 of the Evidence Code. "It is . . . well established that arguments may not ordinarily be raised on appeal for the first time in a reply brief." (*People v. Gonzalez* (2020) 57 Cal.App.5th 960, 978.)

[5] Lopez's request for judicial notice of the contents of his habeas petition, which contains new evidence purporting to establish the availability of an opposing expert, is denied. Unlike a habeas petition, "[a]n appeal is 'limited to the four corners of the [underlying] record on appeal[.]'" (*People v. Waidla* (2000) 22 Cal.4th 690, 703, fn. 1.) Where, as here, the appeal and habeas petition are considered and decided concurrently, the petition may not be used to augment the appellate record. (*Ibid.*)

not speculation, must be established before reversal of a judgment may be had on grounds of ineffective assistance[.]"].)

Lopez also argues that counsel was ineffective for failing to hire an opposing medical expert. But he does not argue that "there was no conceivable tactical purpose for counsel's . . . omission." (*Planchard, supra*, 109 Cal.App.5th at p. 172.) And the record suggests a reasonable basis. Absent any evidence to corroborate a claim of perinatal infection, counsel could reasonably have chosen to instead focus on Lopez's factual defense that he could not have been the person who infected D.L. Counsel vigorously pursued this theory, and presented documentary and testimonial evidence to show that Lopez did not have an active chlamydia infection and had not transmitted the disease to his ex-girlfriend. This evidence belies Lopez's contention that counsel failed to dispute the presumption of sexual transmission, and thereby effectively "closed the possibility of an acquittal."

Second, Lopez argues that trial counsel should have objected to Dr. Jones's testimony on CSAAS as cumulative and unduly prejudicial. (Evid. Code § 352.)[6] "'[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance.'" (*People v. Carrasco* (2014) 59 Cal.4th 924, 985.) This is not one of those rare cases.

---

[6] While Lopez does not cite section 352 of the Evidence Code, his language (i.e. the testimony's "probative value . . . was highly outweighed by its prejudicial impact") suggests that trial counsel should have objected under this section. Unless stated otherwise, further references to statutes are to the California Evidence Code.

Lopez fails to demonstrate that Dr. Jones's testimony was either cumulative or unfairly prejudicial. He argues her testimony "was unnecessary" because "[e]verything [Dr. Jones] testified to could have been stated in closing argument by [t]he [prosecution][,]" but that does not render the evidence cumulative under section 352. (*People v. Lopez* (2021) 65 Cal.App.5th 484, 504 ["[e]vidence '*may* have a lower probative value if it is merely cumulative *of other evidence*"] (italics added); *People v. Perez* (1992) 2 Cal.4th 1117, 1126 ["It is elementary[] . . . that the prosecutor's argument is not evidence[.]"].) An objection along these lines would have been meritless. (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1080 ["Counsel's failure to make a meritless objection does not constitute deficient performance."].)

And while Dr. Jones's testimony may have been prejudicial to some extent, this is not an instance in which, on its face, the evidence's "probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice[.]" (§ 352.) "[E]vidence is substantially more prejudicial than probative . . . if ' "it poses an intolerable 'risk to the fairness of the proceedings or the reliability of the outcome' [citation]." [Citation.] "The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair." [Citation.]' [Citation.]" (*People v. Paniagua* (2012) 209 Cal.App.4th 499, 517.) All evidence tending to prove guilt is prejudicial, and exclusion under section 352 is warranted in those situations when admission of the evidence would invoke an emotional bias against the defendant as an individual while having very little bearing on the issues before the court. (*People v. Barrett* (2025) 17 Cal.5th 897, 954–955.) In light of the substantial hurdles to a

successful section 352 objection, counsel could reasonably have concluded the objection was not worth making. This is especially true, because objecting might only serve to highlight the significance of CSAAS testimony before the jury.

Alternately, Lopez urges that trial counsel's cross-examination of Dr. Jones was inadequate because he did not try to elicit testimony suggesting that D.L.'s mother could have coached her to falsely accuse Lopez. But once counsel learned the People would not call D.L.'s mother to testify (and chose not to call her as a defense witness), any failure to pursue this speculative theory on cross-examination can hardly be deemed ineffective (See *Williams*, *supra*, 44 Cal.3d at p. 933). Counsel also reasonably abandoned a related theory along the lines that D.L.'s mother fabricated abuse allegations to "harm" Lopez and "win custody". Pursuing either of these lines of inquiry could have prompted the prosecution to call D.L.'s mother as a rebuttal witness, and created more obstacles for the defense.

Under these circumstances, trial counsel's decision to focus his cross-examination of Dr. Jones on the reliability and value of the CSAAS model, instead of an unfounded theory about the victim's mother, was presumptively a reasonable tactical choice. (*Planchard*, *supra*, 109 Cal.App.5th at p. 172; *Riel*, *supra*, 22 Cal.4th at p. 1185.)

## II.    Sufficiency of the Evidence

Lastly, Lopez argues that insufficient evidence supports his conviction for the third count of sexual assault. Not so.

In considering whether there is insufficient evidence supporting a criminal conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is

9

reasonable, credible, and of solid value—such that a reasonable trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt. (*People v. Chatman* (2006) 38 Cal.4th 344, 389; *People v. Johnson* (1980) 26 Cal.3d 557, 577–578.) We "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Here, D.L. testified at trial that there were three incidents of assault over a three-day period when she was six or seven years old. The third followed the same general pattern as the first two, with the addition of digital penetration.[7] This evidence is sufficient to support Lopez's conviction. (CALCRIM No. 1190 ["Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone."], *People v. Harlan* (1990) 222 Cal.App.3d 439, 454 ["California law does not require corroboration of the testimony of a child sexual abuse victim[.]"].)

Lopez insists that D.L.'s testimony is insufficient because she provided "no time frame, no specifics, etc., but rather, a very vague statement" that the third assault was "'the same'" as the first two. But it is long settled that in prosecutions for child sex abuse, "the victim's failure to specify precise date, time, place or circumstance" does not "render generic testimony insufficient" to sustain a conviction. (*People v. Jones* (1990) 51 Cal.3d 294, 315.) D.L. "describe[d] *the kind of act or acts committed* with sufficient specificity . . . to assure that unlawful conduct . . . [of a certain] type[]" occurred (i.e., genital contact and digital penetration); "describe[d] the number of acts committed with sufficient certainty to support each of the counts alleged in the information

---

[7]     Lopez does not contest the evidence supporting the first two incidents.

10

or indictment[,]" (i.e., three times in as many days); and "describe[d] the general time period in which these acts occurred" (i.e., when she was six or seven years old and living with father's family). (*Id.* at p. 316.) This testimony is sufficient to support the challenged conviction.[8] (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____,

SIGGINS, J.*

We concur:


_____, Acting P. J.

CHAVEZ


_____, J.

RICHARDSON

---

[8] The contrary authority cited by Lopez is inapposite. (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [generally discussing substantial evidence standard of review and applying it to a civil employment dispute].)

\* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11